IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **THE MG HERRING GROUP INC., THE VILLAGE AT ALLEN LP, and UPTOWN VILLAGE AT CEDAR HILL LP,** | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § § | Civil Action No. **3:09-CV-0455-L** (consolidated with Civil Action No. 3:09-CV-1287-L) |
| **JOHN VRATSINAS COMMERCIAL BUILDERS, INC.,** | § § § | |
| Defendant. | § § | |

**MEMORANDUM OPINION AND ORDER**

Before the court are: (1) Plaintiffs' Motion to Enforce Settlement Agreement and for Sanctions, filed February 18, 2010; and (2) Bank Iowa's Motion to Intervene, filed March 11, 2010. After carefully considering the motions, briefs, record, and applicable law, the court **grants in part** and **denies in part** Plaintiffs' Motion to Enforce Settlement Agreement and for Sanctions and **denies** Bank Iowa's Motion to Intervene.

**I.   Background**

Plaintiffs The Village at Allen LP ("VAA") and Uptown Village at Cedar Hill LP ("UVCH") filed their Original Petition in the 134th Judicial District Court, Dallas County, Texas, on January 20, 2009. Plaintiffs brought claims of breach of fiduciary duty, fraud, negligent misrepresentation, and tortious interference against Defendant John Vratsinas ("Vratsinas"). Vratsinas removed the case to this court on March 9, 2009. Plaintiffs' claims arise from disputes regarding two construction projects.

**Memorandum Opinion and Order – Page 1**

The court consolidated this civil action with another case brought by Plaintiffs The MG Herring Group, Inc. ("MGH"), VAA, and UVCH (collectively, "Plaintiffs") against Defendant John Vratsinas Commercial Builders Inc. ("JVC"). Plaintiffs sought a declaratory judgment as to certain liens. That case was also originally filed in state court and removed to this court. The cases were consolidated by the court on August 6, 2009. Subsequently, on November 25, 2009, JVC filed counterclaims against Plaintiffs. It brought claims against Plaintiffs for breach of contract, quantum meruit, unjust enrichment, and foreclosure of mechanic's and materialman's liens. JVC asserts that Plaintiffs have failed to pay it all amounts due under contracts related to the construction projects.

On January 12, 2010, Plaintiffs moved to dismiss the claims against Vratsinas without prejudice, and the court granted their motion. In their motion, Plaintiffs stated that the parties had reached a settlement. The court therefore administratively closed the case and ordered the parties to file a stipulation of dismissal by February 11, 2010. The court extended this deadline until February 18, 2010. On February 18, 2010, Plaintiffs moved to enforce the settlement agreement and for sanctions against Defendants. On February 26, 2010, counsel for JVC moved to withdraw from representing it, contending that its client had failed to inform it of material facts and to pay attorney's fees. The court granted JVC's counsel's motion in part; it ordered counsel to respond to Plaintiffs' motion before it would permit them to withdraw. JVC, through counsel, filed a response to the motion on March 11, 2010.

On March 11, 2010, Bank Iowa moved to intervene in this civil action pursuant to Rule 24 of the Federal Rules of Civil Procedure. Bank Iowa contends that it has a security interest in moneys owed to JVC by Plaintiffs. Plaintiffs oppose the motion; JVC did not respond. The court now considers the pending motions.

**Memorandum Opinion and Order – Page 2**

## II.     Analysis

### A.     Parties' Contentions

Plaintiffs ask the court to enforce the settlement agreement reached by the parties on January 11, 2010 (the "Settlement Agreement"), after mediation on December 21, 2009. They contend that the Settlement Agreement requires that they deposit $57,500 in the trust account of Defendants' counsel, Locke Lord Bissell & Liddell LLP ("Locke Lord"), for the exclusive purpose of resolving claims by unpaid subcontractors on two construction projects at issue in this litigation. They further contend that they agreed to make this payment in exchange for complete releases of liens on the projects by JVC and the exchange of mutual releases by the parties.

According to Plaintiffs, the finalization of the settlement papers fell apart on February 17, 2010, when Defendants informed them that Bank Iowa had a claim to the settlement proceeds and that the bank did not consent to the payment of those funds to subcontractors. Defendants then sent a draft settlement document that would give the proceeds directly to Bank Iowa. Plaintiffs then moved to enforce the Settlement Agreement.

Defendant JVC is largely unopposed to the relief sought by Plaintiffs. According to its response, JVC "is unopposed to this Court enforcing the Mediator's Proposal executed by the parties in January 2010 . . . . However, at least some modification of the Agreement is required due to changed circumstances after the parties all agreed to and executed the Mediator's Proposal[.]" Resp. ¶ 2. Defendant contends that its counsel, Locke Lord, cannot receive the settlement funds and distribute them because it no longer represents JVC. Defendants propose three possible modifications: (1) direct pay by Plaintiffs to subcontractors; (2) counsel for Plaintiffs hold and

distribute settlement funds; or (3) payment of settlement funds into the registry of the court for distribution by the court.

Plaintiffs oppose all of JVC's proposed modifications. They contend that the purpose of a single payment to Locke Lord was to end their involvement in this case. They argue that the third option would require the court to act as an escrow agent. Plaintiffs maintain that JVC needs to hire new counsel to carry out the Settlement Agreement.

After the motion to enforce the Settlement Agreement was filed, Bank Iowa moved to intervene in this action. It contends that it has an interest in moneys owed to JVC by Plaintiffs. Specifically, it points to an October 16, 2006 commercial security agreement that assigns certain of JVC's accounts and rights to payments to Bank Iowa and a November 30, 2009 assignment of accounts receivable in favor of the bank. The assignment transfers JVC's rights in "accounts receivable owed to [JVC] by MG Herring Group, Inc. . . . ." Mot. to Intervene 5. Bank Iowa argues that based upon these agreements it is entitled to intervene in this action pursuant to Rule 24(a)(2) or (b)(2) of the Federal Rules of Civil Procedure. Because Bank Iowa opposes enforcement of the Settlement Agreement, the court first considers its motion to intervene.

### B. Motion to Intervene

A party may intervene in a lawsuit as of right if the party seeking to intervene timely moves to intervene and "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). In determining whether a motion to intervene is timely, the court must consider four factors:

> (1) the length of time between the would-be intervenor's learning of his interest and his petition to intervene, (2) the extent of prejudice to existing parties from allowing late intervention, (3) the extent of prejudice to the would-be intervenor if the petition is denied, and (4) any unusual circumstances.

*In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 247-48 (5th Cir. 2009) (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263-66 (5th Cir. 1977)). In determining whether a party has a right to intervene, "the inquiry under section (a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application[.]" *Ross v. Marshall,* 426 F.3d 745, 753 (5th Cir. 2005), *cert. denied*, 127 S. Ct. 1125 (2007) (internal citation and quotation omitted); *see also Sierra Club v. Espy,* 18 F.3d 1202, 1205 (5th Cir. 1994) ("Federal courts should allow intervention where no one would be hurt and greater justice could be obtained."). A party may also intervene in a lawsuit by permission of the court by timely moving to intervene if the party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2).

Bank Iowa contends that it has the right to intervene because it has an interest in JVC's counterclaims against MGH. It argues that it cannot protect its property without intervening in this action because JVC cannot prosecute the claims against MGH and is not protecting Bank Iowa's interest. Bank Iowa maintains that the parties did not settle the matter and that when JVC signed the Settlement Agreement, it owned the claims against MGH and did not know that JVC was attempting to settle the claims. It states that it would not agree to approve the settlement when approached by JVC in January 2010. Bank Iowa further contends that Plaintiffs knew it had a security interest in JVC's accounts because it served them with certain objections in JVC's bankruptcy proceedings.

With respect to the Settlement Agreement, Bank Iowa argues that JVC could not settle claims that it did not own and that the agreement contemplates further documents, which were never signed. It further argues that if the court enforces the Settlement Agreement, it will be impaired in exercising its rights under the assignment from JVC. Bank Iowa contends that if the court does not allow it to intervene, it will have to file a separate action to impose a constructive trust over the funds to be paid to the subcontractors.

In the alternative, Bank Iowa argues that the court should permit it to intervene pursuant to Rule 24(b)(2) of the Federal Rules of Civil Procedure. Bank Iowa argues that the court should allow it to intervene within its discretion to prevent further litigation, avoid inconsistent judgments, and promote judicial efficiency.

Under either theory of intervention, Bank Iowa contends that its motion is timely because it was made shortly after it learned that its interests might be jeopardized. Bank Iowa states that it moved as soon as it was told of the proposed settlement, refused to consent to it, and learned that JVC lacked the resources to vigorously prosecute the action.

Plaintiffs respond that Bank Iowa's motion is untimely because it knew a year ago that JVC was asserting these claims and that six months ago it received a subpoena in this action. Plaintiffs also argue that Bank Iowa's claim is based upon an assignment to a nonexistent entity for "accounts receivable" that have not and could not have been at issue in this case.

Plaintiffs argue that Bank Iowa knew that JVC brought counterclaims in its bankruptcy proceedings in April 2009 for amounts due and owing under the contracts at issue in this case, but it never intervened in those proceedings. They also point out that Bank Iowa was subpoenaed in this case and that its counsel actively participated in objections and responses to that subpoena.

**Memorandum Opinion and Order – Page 6**

Plaintiffs contend that intervention at this time would be prejudicial to them because it has no interest in the dispute between JVC and Bank Iowa.

Plaintiffs further contend that the Settlement Agreement is enforceable and that JVC had apparent authority to make that agreement. They also note that this case is over; the only remaining act is to for the parties to file a stipulation of dismissal. Plaintiffs contend that if the court grants the motion to intervene it effectively reopens the entire litigation, which will cost them additional legal fees for a dispute that is not their fault. Plaintiffs further argue that there simply are no "accounts receivable" with MGH at issue. JVC's contracts were with the limited partnerships, VAA and UVCH. Plaintiffs argue that Bank Iowa will not be prejudiced because it can simply sue JVC without involving them. Finally, Plaintiffs contend that the moneys at issue do not belong to JVC; the funds at issue were held in trust for subcontractors, and the Settlement Agreement recognizes this. Plaintiffs also argue that Bank Iowa should not be allowed to intervene permissively because the motion is not timely and there are no common issues with this litigation.

The court first considers whether Bank Iowa's motion to intervene is timely. With respect to the first factor, the length of time that it knew of its interest before seeking leave to intervene, the court finds that this factor weighs in favor of intervention. "The timeliness clock does not start running until the putative intervenor also knows that . . . counsel will not represent his interest." *In re Lease Oil Antitrust Litig.*, 570 F.3d at 248 (citing *Sierra Club*, 18 F.3d at 1206). Although Bank Iowa knew of its potential interest in JVC's counterclaims, it did not know that JVC was not representing its interest until after JVC signed the Settlement Agreement and its counsel moved to withdraw from representation. Bank Iowa learned of the settlement in January 2010, and refused to approve it. Plaintiffs moved to enforce the Settlement Agreement on February 18, 2010. Less

than a month later, Bank Iowa moved to intervene and opposed the enforcement of the Settlement Agreement. Accordingly, the court determines that Bank Iowa quickly moved to intervene after it learned that JVC was not representing its interest in this litigation.

The second factor, the prejudice to existing parties, weighs heavily against allowing intervention. The current parties to the litigation agree that the Settlement Agreement is an enforceable contract. The court has closed this case. Plaintiffs have no interest in the dispute between JVC and Bank Iowa, and allowing intervention would effectively restart the litigation.

The court determines that the third factor, the prejudice to the would-be intervenor if the petition for leave is denied, is neutral. While Bank Iowa contends that the inability to intervene in this case would impair its ability to exercise its rights to the funds at issue, it is unclear whether Bank Iowa has any right to these funds. Moreover, for the reasons set forth below, the court determines that the Settlement Agreement is an enforceable contract. To the extent Bank Iowa has claims against JVC for breach of the agreement between those parties, it can pursue relief against JVC independently without involving Plaintiffs.

The court does not find that there are any unusual circumstances, so this factor also weighs against intervention. Considering the four factors, the court finds that on balance they weigh against intervention. This case has been closed, the parties agree that the Settlement Agreement is enforceable, and the only real legal prejudice would be to Plaintiffs, who are not at fault and who have no stake in the dispute between JVC and Bank Iowa. Accordingly, the court finds that after considering these factors, Bank Iowa's motion should not be considered timely filed.

Bank Iowa's request to intervene also fails in light of the substantive standards of Rule 24. The disposition of this action will not impair its interests. The funds at issue are held in trust for

subcontractors. To the extent Bank Iowa's concern is that JVC's release of claims harmed it, it can always brings claims against JVC independently. The court will not allow Bank Iowa to intervene permissively either. At this stage in the litigation, with the prejudice to Plaintiffs intervention would cause, the court determines that Bank Iowa should not be permitted to intervene. Accordingly, its motion to intervene should be denied.

### C. Motion to Enforce Settlement Agreement

Plaintiffs ask the court to enforce the Settlement Agreement and enter judgment pursuant to the terms of that agreement. They also seek sanctions against JVC for its wrongful conduct. JVC opposes the motion to the extent that it seeks modification of one term and argues that sanctions are not warranted.

#### 1. Enforceability of the Settlement Agreement

The Settlement Agreement provides that the "lawsuit shall be settled in conformity with the following terms." Pls.' App. 4. The first term requires that the agreement be signed by counsel, which it was. *Id*. The second and third terms, which have been completed, required that Plaintiffs dismiss without prejudice their claims against Vratsinas and that JVC provide Plaintiffs with a final pay application for one of the projects. *Id*. The fourth and fifth terms are as follows:

> 4. Plaintiffs will pay into the trust account of Locke Lord the sum of $57,500. On receipt of payment[,] all claims in the lawsuit by any party against another party will be dismissed with prejudice and (1) the parties will execute a broad general mutual release (except to the extent of unexpired warranties for the work performed on Plaintiffs' projects) and (2) Defendants will execute releases of any lien filings on the Plaintiffs' properties. Plaintiffs' counsel will prepare the settlement document draft and is to prepare the lien release it wants JVC to execute.

**Memorandum Opinion and Order – Page 9**

> 5. The amount deposited into the Locke Lord trust account will be used by [JVC] exclusively to pay in its discretion unpaid subcontractor[s], vendor[s], and suppliers for the Plaintiff-owned projects . . . . None of the funds shall be paid directly or indirectly to John Vratsinas or [JVC], but shall be used to pay the third-parties described above. Locke Lord will maintain records to memorialize such usage and report of any disbursement from the fund to Plaintiffs' counsel, as and when they occur. If after 18 months from the date of the case dismissal, there remain any unused funds in the trust account, Locke Lord shall distribute such unused funds to Plaintiffs' counsel for the benefit of their clients.

*Id.* Plaintiffs contend that JVC must hire new counsel to hold and distribute the funds. JVC asks the court to modify the agreement and either require Plaintiffs, their counsel, or the court's registry to hold and distribute the funds.

The court first considers whether the Agreement is an enforceable contract. Under Texas law,

> settlement agreements are enforceable in the same manner as any other written contract. A contract is legally binding only if its terms are sufficiently definite to enable a court to understand the parties' obligations. An agreement to make a contract at a future time is enforceable if it is specific as to all essential terms. By contrast, where an agreement leaves essential terms open for future negotiations, it is not a binding contract but, rather, an unenforceable agreement to agree.

*Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 323 (5th Cir. 2006) (internal citations and quotations omitted).

The court finds that the Settlement Agreement is an enforceable contract that includes the essential terms. Although it anticipates the later signing of further settlement papers and releases, the written document evinces the parties' terms for settling their dispute. The parties agree that the Settlement Agreement is an enforceable contract, and both parties have partially performed pursuant

to it. The court must then determine how to enforce the Settlement Agreement in light of Locke Lord withdrawing from representation of JVC.

The court has carefully reviewed the Settlement Agreement and the parties' arguments. It is clear to the court that Plaintiffs sought to end their role in this litigation by making a single payment to Defendant JVC to settle the counterclaims against them. The language of the Settlement Agreement also demonstrates that paying the subcontractors requires more than simply writing checks. JVC is to pay subcontractors, vendors, and suppliers "in its discretion" with the funds paid by Plaintiffs and deposited in its counsel's trust account. The agreement also includes a provision to return any unpaid funds to Plaintiffs. The Settlement Agreement clearly places the burden of determining who is entitled to payment on Defendant and also includes the safeguard that the settlement funds go to counsel's trust fund instead of going directly to JVC. The court will not shift this burden to itself or to Plaintiffs. The relationship between JVC and Locke Lord has soured and the court has already determined that it will allow Locke Lord to withdraw from representation. JVC, however, has an obligation under the Settlement Agreement to disburse Plaintiffs' settlement funds to subcontractors, vendors, and suppliers. It therefore has an obligation to obtain new counsel to fulfill this role under the Settlement Agreement.[*] The court will therefore order JVC to retain new counsel to represent it in fulfilling its obligations under the Settlement Agreement. Failure to obtain new counsel will result in the court dismissing JVC's counterclaims against Plaintiffs with prejudice.

---

[*]JVC would have an obligation to obtain new counsel in any event because corporations are not permitted to proceed *pro se* in federal court. "The 'clear' rule is 'that a corporation as a fictional legal person can only be represented by licensed counsel.'" *Donovan v. Road Rangers Country Junction, Inc.,* 736 F.2d 1004, 1005 (5th Cir. 1984) (per curiam) (quoting *K.M.A., Inc., v. General Motors Acceptance Corp.*, 652 F.2d 398, 399 (5th Cir. 1982)). When a corporation declines to hire counsel to represent it, the court may properly dismiss its claims, if it is a plaintiff, or strike its defenses, if it is a defendant. *See id.* (holding district court properly struck defenses of corporate defendant who declined to hire counsel).

**Memorandum Opinion and Order – Page 11**

**2.     Sanctions**

Plaintiffs also request that the court levy sanctions against JVC. They contend that JVC violated the court's order by mediating this case without including Bank Iowa, despite assigning certain of its claims to the bank. The declaration of David Coale submitted by Plaintiffs states that their attorney's fees for the work their counsel K&L Gates performed by attending the mediation, preparing additional d]ocuments to implement the settlement, and to file the motion before the court is $21,306.60. The fees by Jim Moomaw, an attorney who also represented Plaintiffs, are $9,500. Plaintiffs also paid $1,800 to Earl Hale as a mediator fee.

JVC responds that the standard for awarding attorney's fees pursuant to the court's inherent authority is very high and that the standard has not been met in this case. It contends that it did not attend the mediation in bad faith and that Plaintiffs will get what they bargained for – the settlement of JVC's claims against them and release of the liens. It argues that if the court decides to sanction, the requested sanctions are too high and are disproportionate to any harm to Plaintiffs. JVC asserts that the most Plaintiffs are entitled to are attorney's fees incurred in preparing their Motion to Enforce the Settlement Agreement.

The court agrees with Plaintiffs that it is clear that JVC assigned its rights to certain claims to Bank Iowa before it mediated this case. It is also clear that Bank Iowa was not involved in the mediation or settlement discussions and that it did not learn the terms of the Settlement Agreement until after it was signed by the parties. The failure to include Bank Iowa in the mediation or settlement is the cause of the continuation of the litigation about the validity of the Settlement Agreement. The court does not think that the entire mediation process was a waste. The court has found that the Settlement Agreement is an enforceable agreement, and the court will enforce it.

JVC's actions with respect to Bank Iowa, which were not disclosed to Plaintiffs and may not have been disclosed to its own counsel, did create additional litigation that could have been avoided. Accordingly, the court determines that Plaintiffs are entitled to their attorney's fees and costs for filing the Motion to Enforce Settlement Agreement and for Sanctions and for responding to Bank Iowa's Motion to Intervene. The declaration submitted with their motion includes fees for preparing for and mediating the case. In light of the court's rulings in this memorandum opinion and order, Plaintiffs are not entitled to recover those fees.

### III.     Conclusion

For the foregoing reasons, the court **grants in part** and **denies in part** Plaintiffs' Motion to Enforce Settlement Agreement and for Sanctions and **denies** Bank Iowa's Motion to Intervene**.** In light of the court's March 3, 2010 order, Locke Lord Bissell & Liddell LLP, A. Shonn Brown, Matthew M. Hurt, Amanda Turner Nobles, and Scott K. Koelker are hereby permitted to withdraw as counsel for JVC and are relieved of any further obligation to JVC in this case**.** Defendant JVC is hereby **ordered** to retain new counsel to represent it and to fulfill its obligations under the Settlement Agreement; such counsel shall file an appearance no later than **June 11, 2010.** Failure to retain new counsel will result in the court dismissing JVC's counterclaims against Plaintiffs with prejudice.

Plaintiffs are entitled to recover from JVC their attorney's fees and costs for filing the Motion to Enforce Settlement Agreement and for Sanctions and for responding to Bank Iowa's Motion to Intervene. Plaintiffs shall submit documentation of their attorney's fees and costs to the court no later than **June 18, 2010**. This documentation must include the hourly rates of all attorneys for which fees are claimed and the number of hours expended. Any objections by Defendant shall

be filed by **July 2, 2010**. The parties are **ordered** to confer and submit a joint proposed judgment or a stipulation of dismissal resolving the claims in this case no later than **July 16, 2010**. The court will issue an order regarding attorney's fees at a later time.

    **It is so ordered** this 18th day of May, 2010.

                                                  Sam A. Lindsay
                                                  United States District Judge